## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| *DANIEL DAX,* ) | |
| ) | |
| *Plaintiff* ) | |
| ) | |
| *v.* ) | *No. 1:15-cv-21-JHR* |
| ) | |
| *CAROLYN W. COLVIN,* ) | |
| *Acting Commissioner of Social Security,* ) | |
| ) | |
| *Defendant* ) | |

### MEMORANDUM  DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal challenges the administrative law judge's findings concerning the plaintiff's age and credibility, and his refusal to admit evidence tendered after the regulatory deadline for doing so.   I affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2013, Finding 1, Record at 17; that he suffered from degenerative disc disease of the cervical spine status post C5-C6 fusion, an impairment that was severe but which did not meet or medically equal the criteria

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted his administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement.  Oral argument was held before me on December 16, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me preside over this action through the entry of judgment. ECF No. 19.

of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id*. at 17-18; that he had the residual functional capacity ("RFC") to perform light work except that he could occasionally climb ramps and stairs but never ladders, ropes, or scaffolds, could occasionally balance, stoop, kneel, crouch, and crawl, must avoid static head positioning above the horizontal plane, and was limited to occasional reaching and lifting overhead of no more than 10 pounds, Finding 5, *id*. at 18; that he was unable to perform any past relevant work, Finding 6, *id.* at 21; that, considering his age (41 years old on his alleged disability onset date, January 15, 2002), education (at least high school), work experience, and RFC, and using Appendix 2 to 20 C.F.R. Part 404, Subpart P (the "Grid") as a framework for decision-making, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*.; and that he, therefore, had not been disabled from January 15, 2002, through the date of the decision, November 26, 2013, Finding 11, *id*. at 22.  The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work

other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I.  Discussion

### A.  Unadmitted Document

The plaintiff first contends that the administrative law judge committed reversible error when he rejected the plaintiff's request to admit a report from an occupational therapist that was apparently submitted fewer than the five business days in advance of the hearing that is required by 20 C.F.R. § 405.331(a). Plaintiff's Statement of Errors ("Itemized Statement") (ECF No. 15-1) at 2. He asserts that "[t]he memo submitted on September 19th [, 2013] provides good cause for admitting the OT report due to Meredith Coffin's having to put aside the preparation of the report in order to care for her brother." *Id*. at 3-4. The memo itself is undated, although the report is dated September 12, 2013. ECF Nos. 15-2 & 15-3. The hearing took place on September 24, 2013. Record at 14.

The plaintiff invokes the following regulatory option to excuse the five-day requirement:

> If you miss the deadline described in paragraph (a) of this section and you wish to submit evidence during the five business days before the hearing or at the hearing, the administrative law judge will accept the evidence if you show that:
>
> * * *
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from submitting the evidence earlier.

20 C.F.R. § 405.331(b)(3). This is a "rather rigorous" standard. *Raymond v. Astrue*, No. 1:12-cv-92-DBH, 2012 WL 6913437, at *2 (D. Me. Dec. 31, 2012).

The administrative law judge addressed the report as follows:

3

The claimant's attorney filed late a therapeutic evaluation conducted 12 days prior to hearing. Despite counsel's acknowledgement that the assessment was submitted late per 20 CFR § 405.331(a) (less than 5 days prior to hearing), and that it was conducted by an occupational therapist, who is not an acceptable medical source (20 CFR § 404.1513), [plaintiff's counsel] argued that the report should be admitted since it is "thorough and detailed [and based on] medical evidence of the 1998 fracture" at C6 (Exhibit 15E). I do not concur, and do not find good cause to admit the untimely filed report. A single evaluation done 11 years after the alleged onset date, and performed by an occupational therapist (OT)[,] is insufficient to counteract nearly 10 years of objective, clinical data already in evidence and provided by other medical personnel[,] namely two neurosurgeons, who are more qualified to assess the claimant's physiologic and neurologic capacity.

Moreover, the record confirms that [plaintiff's counsel] has been the claimant's attorney for nearly two years, since November 2011 (Exhibit 13B), and counsel was notified that the case was being prepared for hearing in October 2012 (Exhibit 12B). Nonetheless, counsel acknowledged at hearing that he did not request the OT evaluation until one month prior to hearing, which he attributed to a "budgetary matter". This professed financial issue does not constitute good cause.

Record at 14.

The defendant argues that the plaintiff has not shown sufficient diligence in obtaining the evaluation and the occupational therapist's report thereof in order to benefit from the application of 20 C.F.R. § 405.331(b)(3). Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 17) at 5. The court need not reach this argument, however, because the plaintiff has not made "the showing of prejudice necessary to warrant reversal and remand" under the circumstances of this case. *York v. Colvin*, 2014 WL 4181616, at *5 (D. Me. Aug. 21, 2014). Indeed, he does not even address the question of how the contents of the report would require, or even support, a different outcome on the merits of his claim.[2] *See id.*

The plaintiff is not entitled to remand on this basis.

---

[2] When asked to address this question at oral argument, the plaintiff's attorney argued that the report "fills out the details" of a diagnosis by an acceptable medical source and that it could have been used to support a finding that the diagnosed impairments led to the limitations found in the report, which would have supported a finding of disability. Long-standing Social Security case law in this district requires more than this; the error, if such it was, in refusing to admit the late-filed report will be deemed harmless unless the plaintiff can demonstrate that its admission and subsequent consideration would have resulted in a different outcome that was more favorable to the plaintiff. *See Wilner v. Astrue*, No. 2:11-cv-21-GZS, 2012 WL 253512, at *3 (D. Me. Jan. 26, 2012).

### B.  Use of the Grid

The plaintiff asserts that the administrative law judge "misconstrue[d] Plaintiff's suggested application of the Medical Vocational Guidelines," apparently meaning to argue, in an extremely brief paragraph, that he should have been awarded benefits by application of the Grid for the period of time after he turned 51 years old, in 2011.  Itemized Statement at 5-6.  At oral argument, counsel for both parties agreed that the plaintiff turned 50 in December 2010.  At that age, the plaintiff would have been characterized as "closely approaching advanced age" for purposes of the Grid, which in some factual circumstances can affect the outcome of an application for benefits.

The plaintiff does not dispute that the only Grid rule that he asked the administrative law judge to apply in this manner was section 201.14.  Record at 22, 34, 342.  Section 201.14 applies only when the claimant's assigned RFC includes an exertional capacity for sedentary work.  The exertional capacity assigned to the plaintiff in this case is for light work, *id*. at 18, which the plaintiff does not challenge on this appeal.  For that exertional capacity, an individual "closely approaching advanced age" with a high school education would be governed by sections 202.13, 202.14, or 202.15, all of which result in a finding that the claimant is not disabled.

The plaintiff has not demonstrated any error in the use of the Grid by the administrative law judge.

### C.  Credibility

As his final point of appeal, the plaintiff contends that the administrative law judge wrongly evaluated his credibility, apparently because he stated that the plaintiff was playing baseball when "[t]here is no mention of baseball in the transcript of the hearing[,]" because he stated that the plaintiff failed to answer questions about his restaurant work when the plaintiff actually did so, and because the medical expert who testified at the hearing was "obviously not certain that there

[were] normal neurological findings," so that the administrative law judge should not have found that the medical expert's testimony supported the findings of the state-agency physician reviewers. Itemized Statement at 6-7.  It is not at all clear to me how the latter claim affects the plaintiff's credibility.

As for the first claim, the plaintiff's argument misses the mark.  There may be no mention of baseball in the transcript of the hearing testimony, but the administrative law judge is not limited to that testimony in making his findings.  The administrative law judge clearly refers to Dr. Arceo's notes as "refer[ring] to the claimant as recently playing baseball[,]" Record at 19, and the record includes Dr. Arceo's note dated February 21, 2011, under the heading "Exercise," stating "Frequency: 5 times per week/Type: baseball, routine stretching, walking." *Id.* at 579-80.  The same entry appears in Dr. Arceo's records for January 7, 2011, *id*. at 359-60; and November 16, 2010, *id*. at 372, 374.  In an office note dated August 20, 2010, Dr. Arceo wrote "has been playing baseball[.]" *Id*. at 769-70.  The administrative law judge noted that the plaintiff testified at the hearing, twice, that he had not played baseball since 2002. *Id*. at 19.  The administrative law judge was entitled to resolve this conflict in the evidence.  *E.g., Benson v. Barnhart*, No. Civ. 03-145-P-H, 2004 WL 413308, at *3 (D. Me. Mar. 3, 2004).

With respect to the plaintiff's testimony about his work as a bouncer (characterized in the itemized statement as "restaurant work," Itemized Statement at 7), the administrative law judge said that "the claimant was evasive in describing his work duties as a bouncer, repeatedly not answering the question whether he had to eject patrons physically from the club where he worked[,]"  Record at 19, not, as the plaintiff would have it, that plaintiff "failed to answer questions about" this work.  Itemized Statement at 7.  The administrative law judge correctly characterized the plaintiff's answers on this point, which are quoted here in full:

Q. You told me today that you were working as a greeter.
A. Right.
Q.  But, the record indicates you were working as a bouncer.
A. Right. . . .
Q.  So, here you are, after your alleged onset of disability claiming you can't lift anything, you have to take a day for rest if you have to lift anything strenuous, but at the same time, you're working three nights a week as a bouncer.
A. Right.
Q. That doesn't make sense to me.
A. What is it that you want to hear?
Q. I want to hear the truth.  I want to hear what can you do, what can't you do?
A. Well, the thing of it [] is that I had really good rapport with people, and I always had support doing my job.   So, for the most part, because I was persuasive when I spoke, I didn't have to do too much of the bouncing aspect of it as much as the greeting aspect of it.  So, before I had broke my neck, I built a rapport with the crowd, if you understand what I'm saying, and it was a lot easier for me to just mention something because people knew that I had the authority to say goodbye if they didn't cooperate, if you understand.  But, for the most, I didn't have to do too much of anything.  Just presence was a major part.
Q. So, you're telling me you never had to bounce anybody?
A.  Physically, pretty much I didn't have to do, I was just there.  Presence, like I said, was a major part of my being there.  That's why they had me at that job. . . .
Q. But, you have to be able to answer my question.  Are you telling me you never had to bounce anybody?
A. Well, when you bounce someone, you ask them to leave.  And, like I said, for the most part, if it came down to it, I always had support there.  There was someone to back me up if there was a problem where it started out or pretty much interfere.  But, like I said, I had built such a rapport that I didn't have to be concerned about having to force someone out physically or not.
Q. But, again, I want you to answer my question.
A. Yes.
Q. Did you ever have to bounce anybody?
A. That's what you asked, that's part of the job right there, yes.

Record at 41-44.

Even if the administrative law judge's conclusions on these two points were erroneous, he discussed several other reasons why he found some of the plaintiff's testimony to be "not credible," including that "the objective record does not corroborate his subjection assertion," *see id.* at 19-20.  Those reasons are sufficient to support the credibility finding.  *See, e.g., Hadley v. Astrue*, No. 2:10-cv-51-GZS, 2010 WL 5638728, at *3 (D. Me. Dec. 30, 2010).

Finally, to the extent that the itemized statement may reasonably be read to raise an issue concerning the administrative law judge's treatment of the testimony of Dr. Webber, the medical expert, at the hearing, the defendant points out, correctly, that "Dr. Webber did not say the record lacked normal neurological findings, but rather[] indicated that the record lacked sophisticated neurological examination or studies to clarify the level of dysfunction[.]" Opposition at 10, Record at 55-56.  In any event, the plaintiff fails to show how he was prejudiced by the failure he alleges.

## II.  Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.


Dated this 28th day of December, 2015.


/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge